**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

HELEN CHISOLM,

                          Plaintiff,

v.

7-ELEVEN, INC., a Texas corporation,

                          Defendant.

Case No.:  18cv893-MMA (MDD)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

[Doc. No. 25]

      Plaintiff Helen Chisolm ("Plaintiff") brings this employment discrimination action against Defendant 7-Eleven, Inc. ("Defendant" or "7-Eleven").  Plaintiff alleges seven claims for: (1) age discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a); (2) race discrimination in violation of FEHA, Cal. Gov't Code § 12940(a); (3) disability discrimination, including failure to accommodate and engage in an interactive process, in violation of FEHA, Cal. Gov't Code § 12940, *et seq.*; (4) retaliation in violation of FEHA, Cal. Gov't Code § 12940(h); (5) FEHA violation based on a combination of protected factors, including age, race, disability/perceived disability, and retaliation, Cal. Gov't Code § 12900, *et seq.*; (6) failure to prevent discrimination and retaliation in violation of FEHA, Cal. Gov't Code § 12940(k); and (7) wrongful termination in violation of public policy.  *See* Doc. No. 1 (hereinafter "Compl.").

Defendant moves for summary judgment as to all of Plaintiff's claims. *See* Doc. No. 25. In the alternative, Defendant moves to limit Plaintiff's recoverable damages at trial. *See id.* Plaintiff filed an opposition to Defendant's motion, to which Defendant replied. *See* Doc. Nos. 28, 32.[1] The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 33. For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment.

## BACKGROUND[2]

Plaintiff is an African-American woman who was born in 1946. Plaintiff was hired by 7-Eleven's predecessor on July 10, 1978, as a Field Representative. Plaintiff left the company in 1984 but returned to 7-Eleven in Las Vegas in 1996 as a Field Consultant. In 1999, Plaintiff transferred to San Diego. Plaintiff was employed by 7-Eleven as a Field Consultant in San Diego from 1999 to March 2018.

Plaintiff's duties as a Field Consultant involved overseeing a group of 7-Eleven stores across Southern California and Southern Nevada to assist franchisees with store operations, including displays and merchandising. The Field Consultant position required extensive walking, stooping, bending, reaching, and stretching. As a Field Consultant, Plaintiff was a salary Grade 23.

---

[1] The Court conducted an initial review of the parties' submissions in connection with Defendant's motion and noted that the parties had failed to submit numerous deposition transcript excerpts cited to and relied up on by the parties in their respective briefs. As such, the Court ordered the parties to refile certain exhibits to complete the record. *See* Doc. No. 29. The parties filed separate notices of errata and refiled various exhibits on April 18 and April 19, 2019, respectively. *See* Doc. Nos. 30, 31.

[2] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. In her response to Defendant's statement of undisputed facts, Plaintiff purports to dispute nearly every fact. The vast majority of the purported disputed facts are premised on speculation, legal argument, or are not supported by the evidence; thus, such facts are treated as undisputed. Where the Court is presented with competing evidence as to a material fact, it will be so noted. Alleged facts that are unsupported by evidence or that are immaterial for purposes of resolving the instant motion are not included in this recitation.

While merchandising in a franchisee's store in 2012, Plaintiff sustained a knee injury and suffered a meniscal tear. Plaintiff sustained additional injures in an on-the-job car accident in 2013 and suffered injuries to her shoulder, neck, back, and knees. As a result, Plaintiff took a medical leave of absence from 7-Eleven beginning in November 2013. Plaintiff ultimately underwent a right knee replacement surgery and a surgery on her left shoulder, in addition to other forms of treatment.

On March 2, 2016, Michael Kelsey, a Leave of Absence Specialist who performed work for 7-Eleven, reached out to Plaintiff to discuss her work status. *See* Plaintiff Dep. II, Ex. 20.[3] Plaintiff's doctors provided her with permanent work restrictions resulting from her work-related injuries. Kelsey requested Plaintiff submit a current copy of her resume so 7-Eleven could evaluate her qualifications for other available positions. *See* Plaintiff Dep. I, Ex. 8.

In May 2016, Plaintiff informed Kelsey that she was scheduled to undergo an additional surgery on her right knee and reiterated that her status is still "permanent and stationary." Plaintiff Dep. I, Ex. 4. Plaintiff further noted that due to her work restrictions, she "cannot return to the position of Field Consultant, and must have a position that fits those limitations." *Id.*

Plaintiff was released by her doctors to return to work with restrictions in August 2016. *See* Plaintiff Dep. I, Ex. 5. Plaintiff again indicated that she was unable to return to the Field Consultant position, "but can accept positions with limited walking and kneeling, etc." *Id.* Plaintiff informed Kelsey that she saw a posting on 7-Eleven's job posting website for a Senior Real Estate Representative ("SRER") position with the company and believed she could manage this position with her current limitations. *See id.*

Plaintiff applied for a SRER position while on leave. Plaintiff interviewed with

---

[3] In support of its motion, Defendant submits copies of exhibits identified by various individuals at their respective depositions. *See* Doc. No. 31.

Jeffrey Tucker and Teresa Opsahl, but Tucker was the sole decision-maker for the SRER position. The SRER position was a Grade 24 position and would have been a promotion for Plaintiff. Tucker ultimately selected a woman named Bobbie King for the position at the end of January 2017.

Plaintiff visited 7-Eleven's job posting website regularly and was unable to identify any positions, aside from the SRER position, that she was interested in and that she believed she was qualified for and could be transferred to in light of her work restrictions. *See* Plaintiff Dep. II at 245-46.[4]

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") in March 2017 claiming age, race, sex, and disability discrimination in connection with 7-Eleven's failure to hire her for the SRER position. *See* Plaintiff Dep. I, Ex. 14. In September 2017, the EEOC issued a Dismissal and Notice of Rights letter, and closed its file on the charge. Plaintiff Dep. I, Ex. 15.

On January 9, 2018, Kelsey emailed Plaintiff and advised her that "[c]urrently[] there is no available position at Grade 23 or lower in San Diego or Las Vegas that could be modified with a reasonable accommodation to physically require only light walking and allow the employee to primarily work from home." Plaintiff Dep. II, Ex. 33. 7-Eleven provided Plaintiff sixty (60) days to apply for and return to work for 7-Eleven. *See id.* Plaintiff responded to Kelsey's email, and inquired as to whether 7-Eleven would only consider her for positions that are Grade 23 or lower. *See id.* Kelsey informed Plaintiff that she would be considered for "any opportunity that she applied for." Kelsey Dep. at 40. Plaintiff did not apply for any other positions with 7-Eleven.

"Plaintiff filed an amended complaint with the [Department of Fair Employment and Housing ("DFEH")] on January 30, 2018. The DFEH issued an immediate right to sue notice on the same day." Compl. ¶ 28. Plaintiff filed an additional amended

---

[4] Citations to deposition testimony refer to the pagination assigned at the bottom of each page by the reporting company that transcribed the proceedings.

complaint with the DFEH on April 10, 2018, and the DFEH issued an immediate right to sue notice that same day. *See id.*

7-Eleven terminated Plaintiff's employment in March 2018. *Id.* ¶ 10. Plaintiff commenced the instant action on May 9, 2018. *See* Compl. Plaintiff seeks economic, non-economic, and punitive damages. *See id.*

<u>**LEGAL STANDARD**</u>

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.*

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)). However, the Ninth Circuit has made clear that "it should not take much for plaintiff in a discrimination case to overcome a summary judgment motion." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 499 (9th Cir. 2015). "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a

factfinder, upon a full record." *Id.* (internal quotation marks and citation omitted).

## I.   Defendant's Evidentiary Objections

As a preliminary matter, Defendant objects to several documents submitted in connection with Plaintiff's opposition to the instant motion. *See* Doc. No. 32-4. Specifically, Defendant seeks to exclude: (1) an email dated March 4, 2018, from Plaintiff to Kelsey, attached to the declaration of Joshua Arnold (Doc. No. 28-2, hereinafter "Arnold Decl.") as Exhibit 24; (2) the declaration of Fe Demasco in its entirety, attached to the declaration of Joshua Arnold as Exhibit 28; and (3) several excerpts of Plaintiff's declaration, attached to the declaration of Joshua Arnold as Exhibit 29. The Court ordered supplemental briefing on the objections to give Plaintiff an opportunity to respond. Plaintiff filed a supplemental brief on May 9, 2019, and Defendant filed a responsive supplemental brief on May 13, 2019. *See* Doc. Nos. 35, 36.

First, with respect to the Kelsey email, Defendant argues that Plaintiff produced the email for the first time at Kelsey's deposition on February 28, 2019—after the February 8, 2019 discovery deadline.[5]  As such, Defendant seeks to exclude the email as untimely. Federal Rule of Civil Procedure 37(c) provides in part that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party facing sanctions bears the burden of demonstrating the late disclosure was substantially justified or is harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Here, Defendant contends the failure to timely produce the email was not

---

[5] The assigned magistrate judge extended the discovery deadline to February 28, 2019 "for the *sole purpose* of accommodating . . . *six depositions*." Doc. No. 22 at 2 (emphasis added). Thus, the magistrate judge's order did not alter the February 8, 2019 deadline for all other discovery.

substantially justified or harmless, as Plaintiff's counsel was copied on the email. *See* Arnold Decl., Ex. 24. The Court agrees. Plaintiff and her counsel have been in possession of the email since March 4, 2018, and Plaintiff provides no explanation as to why she did not produce the email with her initial disclosures, or why she did not supplement her initial disclosures. *See* Fed. R. Civ. P. 26(a),(e). Rather, Plaintiff argues that "as Plaintiff understands it, discovery was open" and further asserts that Defendant also produced new documents after the discovery deadline. Doc. No. 35 at 2. Plaintiff's argument regarding the discovery deadline is unavailing, as Judge Dembin was clear in his order that the short extension was for the "sole purpose" of accommodating the remaining six depositions. Doc. No. 22 at 2. Moreover, the fact that Defendant may have also produced documents after the discovery deadline is irrelevant to the instant dispute and does not serve as a substantial justification for Plaintiff's delay. *Cf. Macias v. Perez*, No. 10cv973-MMA (BGS), 2011 WL 2669475, at *3 (S.D. Cal. July 7, 2011) (finding no substantial justification where the plaintiff submitted expert report after the applicable deadline because the expert was in trial and could not be reached before the discovery deadline). Nor has Plaintiff shown that the delay was harmless. As Defendant points out, the untimely disclosure "deprived 7-Eleven of the opportunity to ask Plaintiff, or any of the other deposed witnesses, about the document." Doc. No. 36 at 2. Accordingly, the Court **SUSTAINS** Defendant's objection to the March 4, 2018 email (Arnold Decl., Ex. 24).[6]

Second, Defendant argues that Plaintiff never disclosed Demasco as a witness during discovery; thus, her declaration should be excluded as untimely pursuant to Rule 37. *See* Doc. No. 32-4 at 3, 5. As noted above, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the

---

[6] As such the Court need not reach Defendant's remaining arguments regarding the admissibility of the Kelsey email.

failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Here, Defendant argues Plaintiff's non-disclosure is not substantially justified or harmless.  In opposition, Plaintiff asserts Demasco's declaration is admissible because Plaintiff identified someone named "Faye" at her deposition (Plaintiff Dep. I at 34, 103-104), and in her initial disclosures, after listing people Plaintiff knew to be relevant, Plaintiff disclosed "other persons associated with Defendant" (Doc. No. 35-1 (hereinafter "Arnold Supp. Decl."), Ex. 1.).  With respect to identifying someone named "Faye" at Plaintiff's deposition, Defendant points out that Plaintiff only identified her by her first name, and could not provide a last name.  *See* Doc. No. 32-4 at 3.  "[T]he identity of Ms. Demasco, as well as the nature and extent of her purported relevant knowledge, only became known to 7-Eleven through her subject declaration."  Doc. No. 36 at 4.  "The mere mention of a witness name in a deposition or document is generally not sufficient" to put the other party on notice that the individual is being disclosed as a trial witness.  *Classical Silk, Inc. v. Dolan Grp., Inc.*, No. 14-cv-9224-AB (MRWx), 2016 WL 7638112, at *8 (C.D. Cal. Mar. 21, 2016).  Additionally, Plaintiff's argument that simply listing "other persons associated with Defendant" in her initial disclosures is somehow sufficient to put Defendant on notice of Demasco's identity is unavailing.  Plaintiff has failed to demonstrate her non-disclosure was substantially justified or harmless.  Plaintiff's failure to supplement her initial disclosures deprived Defendant of the opportunity to notice Demasco's deposition and explore the basis for the opinions set forth in her declaration.  Accordingly, the Court **SUSTAINS** Defendant's objection to Demasco's declaration.[7]

Lastly, Defendant objects to paragraphs 6, 8, and 9 of Plaintiff's declaration.  Specifically, Defendant argues that: (1) a portion of paragraph 9 contradicts Plaintiff's deposition testimony and is subject to the sham affidavit rule; (2) a portion of paragraph 9

---

[7] As such, the Court need not reach Defendant's remaining arguments regarding the admissibility of Demasco's declaration.

is unsupported by personal knowledge and thus lacks foundation; and (3) portions of paragraphs 6 and 8 are time-barred and irrelevant. *See* Doc. No. 32-4 at 6.

Defendant first claims that paragraph 9 of Plaintiff's declaration constitutes sham testimony. Specifically, Plaintiff avers in her declaration that she was "qualified" for the franchise representative position in San Diego that Fay Demasco informed her about. *See* Arnold Decl., Ex. 29 (hereinafter "Chisolm Decl.") ¶ 9. At her deposition, Plaintiff testified that "Faye" told her about a merchandising position in San Diego.[8] *See* Plaintiff Dep. I at 104. When asked whether Plaintiff "knew anything about the job duties" or the "physical requirements" for the position, Plaintiff responded, "[n]o, I don't." *Id.* at 106. Plaintiff does not substantively respond to Defendant's argument.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). "[I]f a party who has been examined at length on deposition could raise an issue of fact by simply submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* The Ninth Circuit has fashioned "two important limitations on a district court's discretion to invoke the sham affidavit rule." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). First, the rule does not apply automatically to every case where a contradictory affidavit is introduced; rather, "the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* (quoting *Kennedy*, 952 F.2d at 267). Second, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99. For example, the non-moving party is not prohibited from elaborating on, explaining, or clarifying prior testimony and "minor inconsistencies that result from an honest discrepancy, mistake, or

---

[8] Plaintiff was unable to recall the title of the position at her deposition. *See* Plaintiff Dep. I at 104.

newly discovered evidence[.]" *Id.* at 999.

Here, the Court finds that both limitations are satisfied. Plaintiff was deposed in February 2019 and admitted she did not know the job duties or physical requirements for the franchise representative position, yet in opposition to Defendant's motion to dismiss, Plaintiff submits a declaration that contradicts her deposition testimony. In her statement of undisputed facts, Plaintiff relies on paragraph 9 of her declaration in asserting that during the time Plaintiff was on medical leave, "the San Diego franchisee representative position which Plaintiff was both physically capable of performing and qualified to perform changed hands from Greg to Sean Edwards without Plaintiff being given an opportunity to apply for the role." Statement of Undisputed Facts ¶ 111. Plaintiff further cites to this fact in her opposition brief. *See* Doc. No. 28 at 5. Thus, the Court finds that the contradiction in that portion of paragraph 9 of Plaintiff's declaration is a "sham," and that the inconsistencies between the deposition testimony and subsequent declaration are "clear and unambiguous" and not just "minor inconsistencies that result from an honest discrepancy, mistake, or newly discovered evidence." *Van Asdale*, 577 F.3d at 998-99. Accordingly, the Court **SUSTAINS IN PART** Defendant's objection to that portion of paragraph 9 of Plaintiff's declaration wherein she declares that she was qualified for the franchise representative position in San Diego pursuant to the sham affidavit rule.[9]

Additionally, Defendant contends that Plaintiff's statements about the alleged complaints to HR in 2011 and 2013 (*see* Chisolm Decl. ¶¶ 6, 8) are time-barred pursuant to the continuing violation doctrine (*see* Doc. No. 32-4 at 6). The Court addresses the continuing violation doctrine more fully below with respect to Plaintiff's age and race discrimination claims. For purposes of the instant objection, however, the Court finds that while Plaintiff cannot rely on these statements to support new claims for liability, Plaintiff may use these prior acts "as background evidence in support of a timely claim."

---

[9] Thus, the Court need not address Defendant's remaining arguments with respect to the admissibility of paragraph 9.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, the Court finds that these statements are relevant (*see* Fed. R. Evid. 401) and **OVERRULES** Defendant's objection to Plaintiff's statements about her alleged complaints to HR in paragraphs 6 and 8 of her declaration.

## II.    Defendant's Motion for Summary Judgment

Defendant moves for summary judgment as to all of Plaintiff's claims, arguing that all causes of action fail as a matter of law. *See* Doc. No. 25-1. Additionally, Defendant contends that to the extent any of Plaintiff's claims survive summary judgment, the Court should dismiss Plaintiff's punitive damages claim. *See id.* at 23. In opposition, Plaintiff asserts triable issues of fact exist as to each cause of action, thereby precluding summary judgment. *See* Doc. No. 28.[10]

### 1.    *McDonnell Douglas* **Burden-Shifting Framework**

A plaintiff in a FEHA retaliation or discrimination case may create genuine issues of material fact by offering direct or circumstantial evidence of retaliation. "Direct evidence is evidence which, if believed, proves the fact of animus without inference or presumption. Comments demonstrating animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." *DeJung v. Superior Court*, 87 Cal. Rptr. 3d 99, 111 (Ct. App. 2008); *see also Patten v. Wal-Mart Stores East, Inc*., 300 F.3d 21, 25 (1st Cir. 2002) (noting direct evidence "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision") (internal quotation marks and citation omitted). In the case of circumstantial evidence, the California Supreme Court has adopted the tripartite burden-shifting framework established in

---

[10] Plaintiff also contends that triable issues of fact exist for "all of Plaintiff's causes of action" because Defendant repeatedly departed from its procedures and made false exculpatory statements. *See* Doc. No. 28 at 11. Upon review, the Court finds Plaintiff's arguments are either irrelevant or insufficient to raise a genuine dispute of *material* fact with respect to any of her claims. Where applicable, the Court addresses Plaintiff's arguments below as they relate to a specific cause of action.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to analyze retaliation and discrimination claims brought under FEHA. *See Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1113 (Cal. 2000). If the plaintiff chooses to rely on direct evidence, the three-part *McDonnell Douglas* test does not apply. *See DeJung*, 87 Cal. Rptr. 3d at 111.

Under *McDonnell Douglas Corp.*, the plaintiff has the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802-04. Once a prima facie case is shown, a presumption of discrimination arises and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, non-discriminatory or non-retaliatory reason. *Id.* Stating a legitimate, non-discriminatory, non-retaliatory reason negates the presumption of discrimination and shifts the burden back to the plaintiff to demonstrate that the proffered reason was a pretext for discrimination. *Id.*

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quotation omitted). "Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Id.* (quotation omitted) (alterations in original). If the employer meets its burden, the discharged employee must demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." *Id.* at 746 (quotation omitted) (omission in original).

**2. Disability Discrimination Claims**

In her third cause of action, Plaintiff alleges three distinct claims for disability discrimination. Specifically, Plaintiff claims Defendant: (a) discriminated against her based on her disability by treating non-disabled employees more favorably; (b) failed to provide reasonable accommodation to Plaintiff; and (c) failed to engage in a good faith interactive process to accommodate Plaintiff's disability. *See* Compl. ¶ 52.

### a. *Disability Discrimination*

Plaintiff first asserts that she was discriminated against based on her disability because she was treated less favorably than non-disabled individuals. Compl. ¶ 52. Although Plaintiff's complaint is vague with respect to the alleged less favorable treatment, Plaintiff's opposition brief clarifies that "Plaintiff disclosing her disability was a 'turn off' that directly resulted in her not getting a [SRER position]." Doc. No. 28 at 13. Defendant argues this claim fails because Plaintiff "has no evidence to support a finding that her disability was a determining factor in her not receiving the promotion to an SRER position[.]" Doc. No. 25-1 at 7. Moreover, Defendant asserts that even if Plaintiff could state a prima facie case of disability discrimination, she fails to show Defendant's reason for selecting a different candidate is pretextual. *See id.* In opposition, Plaintiff argues that the *McDonnell Douglas* framework does not apply because she has produced direct evidence of discrimination. *See* Doc. No. 28 at 16.

FEHA makes it unlawful for "an employer, because of . . . physical disability . . . of any person . . . to refuse to hire or . . . discharge the person from employment[.]" Cal. Gov't Code § 12940(a). To establish a prima facie case of disability discrimination under FEHA, a plaintiff must show: "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." *Faust v. Cal. Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 745 (Ct. App. 2007).

### i. Applicability of the *McDonnell Douglas* Burden-Shifting Framework

As an initial matter, the parties disagree on whether the *McDonnell Douglas* framework applies to Plaintiff's disability discrimination claim. Plaintiff's purported direct evidence consists of statements made by Tucker during his deposition. Plaintiff argues that during his deposition, Tucker "admitted that he did not know about Plaintiff's disability prior to the interview, and when she informed him of it, he and the other interviewer were turned off in a way that no other aspect of the interview turned them off.

This is direct evidence of disability discrimination." Doc. No. 28 at 16. Additionally, Tucker "also used common euphemisms for age and disability discrimination—Plaintiff didn't show the energy and enthusiasm of a younger, non-disabled employee, whom he admitted choosing despite her limited exposure to areas which would be key areas of knowledge for the position[.]" *Id.*

At his deposition, Tucker testified as follows:

Q.     Did you and Miss Opsahl have a discussion about Helen Chisolm after her interview?

A.     We did.

Q.     And what was -- what did the two of you discuss there?

A.     We talked about her experience inside of Human Resources and how she was willing to have very candid conversations. And we both felt like, you know, she was a good candidate but that she had answered a question that somewhat turned both of us off to the role.

Q.     And what was the question?

A.     I asked her why she wanted to become a senior real estate rep, and she answered the question saying that she was just looking for a job where she could still be a part of the company that didn't require, you know, all the issues that she was having physically, and that, you know, what enticed her about it was that she wanted to just sit in a car and count cars at intersections.

Tucker Dep. at 42-43.

Additionally, when asked by Plaintiff's counsel about his selection for the SRER position, Tucker testified as follows:

Q.     And we've kind of talked about it a little bit, but you selected Bobbie because, for example, the - - she'd done - - I think something like a ride-along with one of the real estate reps. She had shown a lot of *energy* in terms of pursuing knowledge about the role. Is that fair to say?

A.    That was part of it.

Q.     And what was the other part of it?

A.    Her experience in that specific territory that she was going to be taking over.

Q.    And with Helen, you felt as though the way she was falling short was showing *enthusiasm* for the role itself as opposed to just - -

A.    Yeah - -

*Id.* at 66 (emphasis added).

Here, upon review, the Court finds Tucker's deposition testimony cannot be characterized as direct evidence of discrimination. First, Plaintiff mischaracterizes Tucker's testimony regarding Plaintiff's disability. At his deposition, Tucker explained that Plaintiff's *answer to his question* about why she wanted the SRER position turned him off to selecting Plaintiff for the role. Specifically, Plaintiff responded that she desired the position because "she wanted to just sit in a car and count cars at intersections." Tucker Dep. at 43.

Second, Tucker did not use the words "energy" or "enthusiasm" at his deposition. Rather, *Plaintiff's counsel* used those terms in questioning Tucker. Thus, contrary to Plaintiff's contention, Tucker's testimony does not prove animus without inference or presumption. *Cf. Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1128 (9th Cir. 2000) (finding direct evidence of discriminatory motive in a statement by an individual with decisionmaking authority that "two Chinks" in the pharmacology department were "more than enough.").

Accordingly, in considering the relevant testimony, the Court concludes that Plaintiff's evidence is properly characterized as circumstantial, thus warranting application of the *McDonnell Douglas* framework. *See Fu v. Walker Parking Consultants*, 796 F. Supp. 2d 1148, 1154 (N.D. Cal. 2011) ("Upon review, the Court

finds that Plaintiff offers no direct evidence of Defendant's discriminatory animus.")

     ii. <u>Prima Facie Case</u>

   Under the *McDonnell Douglas* burden-shifting framework, Defendant bears the burden of showing either that: "(1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Lucent Techs., Inc.*, 642 F.3d at 745 (quotation omitted) (alterations in original). If the employer meets its burden, the burden shifts back to the discharged employee to show pretext. *See id.* at 746.

   It is undisputed that the first two elements of Plaintiff's disability discrimination claim are satisfied. Nor is it disputed that Plaintiff was subject to an adverse employment decision (i.e., non-selection for the SRER position). Thus, the remaining element of Plaintiff's prima facie case is whether Plaintiff was subjected to an adverse employment action *because of* her disability. Plaintiff contends that the causation element of her disability discrimination claim is met because of a "hiring freeze" that occurred after she first applied for one of eleven available SRER positions. Doc. No. 28 at 15. Moreover, Plaintiff asserts that Tucker, a white male in his thirties, received multiple promotions, whereas Plaintiff "spent her last 22 years getting great reviews and no promotions as a field consultant." *Id.* Finally, Plaintiff claims that when she disclosed her disability during the interview, Tucker and Opsahl "were turned off in a way that no other aspect of the interview turned them off." *Id.* at 16.

   Here, in reviewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to set forth evidence establishing a discriminatory motive. First, Plaintiff claims that after she applied for the SRER position, she was told the SRER positions "will no longer be filled at all" due to a hiring freeze. Doc. No. 28 at 15. Plaintiff claims that Senior Management Talent Acquisition Recruiter, Donovanh Fabia, does not recall any hiring freeze during 2016, and that he would have known if there had been such a hiring freeze. *See id.* Thus, Plaintiff asserts she "is entitled to an inference that 7-Eleven did not want to place Plaintiff in a[] SRER position, despite her

qualifications." *Id.*  However, at his deposition, Fabia testified as follows:

> Q.    Do you recall there being a hiring freeze in 2016?
>
> A.    I do not.
>
> Q.    As a recruiter would you expect to be aware of a hiring freeze for positions you're attempting to fill?
>
> A.    Yes.
>
> Q.    Do you recall any hiring freeze during your employment with 7-Eleven?
>
> A.    I do.
>
> Q.    And when was that?
>
> A.    I can't answer those dates.
>
> Q.    And with that hiring freeze is it for a particular selected role or literally everybody throughout the company, the one you remember?
>
> A    It would be throughout the company.
>
> Q.    You recall that [a hiring freeze] occurred, but you can't recall when; is that correct?
>
> A.    Correct.

Fabia Dep. at 94-95.

Contrary to Plaintiff's contention, Fabia does recall there being a hiring freeze during his five-year employment with 7-Eleven.  That Fabia does not recall the specific dates of the hiring freeze does not support Plaintiff's argument that Fabia does not recall any hiring freeze.  As such, Fabia's testimony does not support Plaintiff's argument. Additionally, Plaintiff points to no other evidence or legal authority to support her claim that she is entitled to an inference that 7-Eleven did not want to place her in a SRER position.  In fact, Defendant posted an opening for a SRER position in 2017, after the hiring freeze, and Plaintiff interviewed for the position.

Second, Plaintiff's speculation regarding Tucker's various promotions is

insufficient to show Plaintiff was discriminated against based on her disability. Plaintiff fails to submit any evidence establishing that she and Tucker are similarly situated employees. Specifically, Plaintiff submits no evidence regarding when Tucker received his various promotions, whether Plaintiff applied for any of the positions Tucker was selected for, and whether Plaintiff was even disabled at that time.

Finally, as noted above, Plaintiff mischaracterizes Tucker's deposition testimony. Tucker testified that Plaintiff "was a good candidate but *she had answered a question* that somewhat turned both [he and Opsahl] off to the role." Tucker Dep. at 43 (emphasis added). When asked why she wanted the SRER position, Plaintiff replied that she "was just looking for a job where she could still be a part of the company that didn't require, you know, all the issues that she was having physically, and that, you know, what enticed her about it was that she wanted to just sit in a car and count cars at intersections." *Id.* Moreover, Tucker did not "use[] common euphemisms for age and disability discrimination." Doc. No. 28 at 16. Rather, Plaintiff's counsel used those terms in questioning Tucker. Thus, in the absence of any evidence, Plaintiff's arguments are speculative and insufficient to demonstrate discriminatory motive.

Accordingly, because Plaintiff offers no admissible evidence to support her claim that her disability was a determining factor in her not receiving the promotion to an SRER position, Plaintiff's claim fails as a matter of law. *See Weil v. Citizens Telecom Servs. Co.*, --- F.3d ---, 2019 WL 1891796, at \*7 (9th Cir. 2019) (noting "the plaintiff still must produce evidence [to establish a prima facie case], not just pleadings or argument.").

### iii. Legitimate, Non-Discriminatory Reason

Even if Plaintiff could satisfy the causation element of her disability discrimination claim, the burden shifts to Defendant to provide a legitimate, non-discriminatory reason for Plaintiff's non-selection for the SRER position.

"The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was

preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id.* at 255. Under FEHA, a defendant's true reasons, "if nondiscriminatory, . . . need not necessarily have been wise or correct . . . . While the objective soundness of an employer's proffered reasons supports their credibility, the ultimate issue is simply whether the employer acted *with a motive to discriminate illegally*." *Guz*, 8 P.3d at 1115. "Thus, 'legitimate' reasons . . . in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus prohibit a finding of *discrimination*." *Id.* at 1115-16 (emphasis in original) (citing *Burdine*, 450 U.S. at 254).

Here, even assuming Plaintiff could state a prima facie case of disability discrimination, Defendant has met its burden of demonstrating a legitimate, non-discriminatory reason for Plaintiff's non-selection. Tucker testified that he believed King was the best candidate for the role, noting that she blew him and Opsahl away in the interview. Tucker Dep. at 41. Specifically, King "was very knowledgeable and had done her homework in talking to other senior real estate reps that were currently in the role to create an understanding and knowledge base for the role[.]" *Id.* When there was a temporary vacancy in a Market Manager role, King was selected to be the temporary Market Manager, in charge of supervising all Field Consultants in her market. *See id.*, Ex. 12. King also won her market's Most Valuable Player Award in fiscal years 2015 and 2016. *See id.*

With respect to Plaintiff, Tucker explained that he recalled Plaintiff "beating around the bush on questions and not answering them directing and deferring things to some of her operations experience that [he] didn't think was relevant to the questions [he] was asking." *Id.* at 44. Additionally, Tucker noted in his internal interview feedback that

he tried to "draw out real estate related issues with stores that [Plaintiff] has had and she wasn't connecting those references." Tucker Dep., Ex. 13. Tucker remarked that "[g]iven [Plaintiff's] level of candidness and ability to have tough conversations she would do well in an HR role." *Id.*

Defendant has submitted substantial evidence that Plaintiff's non-selection for the SRER position was for a legitimate, non-discriminatory reason. "A reason is 'legitimate' if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of [retaliation or discrimination].'" *Reid v. Google, Inc.*, 235 P.3d 988, 993 n.2 (Cal. 2010) (citing *Guz*, 8 P.3d at 1115-16) (emphasis omitted)). Accordingly, the burden shifts to Plaintiff to show pretext.

### iv. Pretext

Plaintiff summarily asserts that the *McDonnell Douglas* burden-shifting framework does not apply, but even if it does, "this [evidence] would more than satisfy any such analysis." Doc. No. 28 at 16.

A plaintiff may demonstrate pretext by showing that the employer's proffered explanation is unworthy of credence because it is "internally inconsistent or otherwise not believable." *Chuang*, 225 F.3d at 1127. When evidence of pretext is circumstantial, rather than direct, as in this case, "the plaintiff must produce specific, substantial evidence of pretext." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted). "An employee in this situation can not simply show the employer's decision was wrong, mistaken or unwise." *Morgan v. Regents of the Univ. of Cal.*, 105 Cal. Rptr. 2d 652, 670 (Ct. App. 2000) (internal quotation marks and citation omitted). "Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence" and infer that "the employer did not act for the . . . non-discriminatory reasons." *Id.* (emphasis in original) (internal quotation marks and citations omitted).

Plaintiff presents no evidence to overcome Defendant's showing of a legitimate, non-discriminatory reason for selecting a different candidate for the SRER position. Rather, Plaintiff simply argues that she had "more experience" and a "better education than the candidate ultimately chosen." Doc. No. 28 at 15. However, Plaintiff provides no evidence to support her claim. As noted previously, Defendant submits extensive evidence outlining King's experience, qualifications, and performance during the interview.

Further, Plaintiff concedes that she never heard or saw anything in writing that she felt was disparaging or negative about her disability or her work restrictions. *See* Plaintiff Dep. I at 64. Tucker indicated that he did not learn about Plaintiff's medical restrictions until he interviewed her, at which point he recalls her saying "she had a problem with one of her knees" and that "there were problems with soreness and pain and lifting . . . where she couldn't do the field consultant job that she had done previously." Tucker Dep. at 20-21. However, Tucker testified that he believed Plaintiff was physically capable of performing the SRER duties even with her medical restrictions. *Id.* at 20. When asked whether Plaintiff's disclosure of her medical restrictions played any role at all in who was ultimately selected for the SRER position, Tucker responded, "[n]one at all." *Id.* at 21.

Thus, construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to put forth evidence that would permit a reasonable jury to find Defendant's proffered reasons for Plaintiff's non-selection for the SRER position are pretextual. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to this claim. *See Guz*, 8 P.3d at 1117 (stating that "an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.").

### b. Failure to Accommodate

Plaintiff next claims Defendant discriminated against her by not providing

reasonable accommodation. Specifically, Defendant failed to: (1) extend "Plaintiff's leave in order to allow her to apply for new positions" and, (2) place "Plaintiff into open positions for which Plaintiff was well-qualified[.]" Compl. ¶ 52. Defendant argues Plaintiff's failure to accommodate claim fails as a matter of law because 7-Eleven "accommodated Plaintiff by extending her leave over four years—much longer than what was reasonably required—during which time there were no open and available positions within Plaintiff's geographic limitations to which she could be transferred[.]" Doc. No. 25-1 at 4.

Under FEHA, an employer must "make reasonable accommodation for the known physical or mental disability" of an employee. Cal. Gov't Code § 12940(m)(1). "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Lui v. City and Cnty. of San Francisco*, 150 Cal. Rptr. 3d 385, 393 (Ct. App. 2012) (internal quotation marks and citation omitted). A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 83 Cal. Rptr. 3d 190, 211 (Ct. App. 2008); *see also Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092, 1111 (E.D. Cal. 2014).

Reasonable accommodation may include making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities, or job restructuring, modified work schedules, reassignment to a vacant position, acquisition or modification of equipment, adjustment of examinations, training materials or policies, providing qualified readers or interpreters, and other similar accommodations. *Taylor*, 58 F. Supp. 3d at 1111-12; *see also* Cal. Gov't Code § 12926(p). However, a reassignment "is not required if there is no vacant position for which the employee is qualified." *Cuiellette v. City of L.A.*, 123 Cal. Rptr. 3d 562, 569 (Ct. App. 2011) (internal quotation marks and citation omitted). This responsibility does "not require creating a new job,

moving another employee, promoting the disabled employee or violating another employee's rights[.]" *Furtado v. State Personnel Bd.*, 151 Cal. Rptr. 3d 292, 304 (Ct. App. 2013) (internal quotation marks and citation omitted).

Here, with respect to Plaintiff's medical leave, it is undisputed that Defendant provided Plaintiff with continued medical leave for more than four years. Plaintiff remained on leave until the date of her termination in March 2018. *See* Plaintiff Dep. II, Ex. 35; Compl. ¶ 10. "A reasonable accommodation can include providing the employee accrued paid leave or additional unpaid leave for treatment . . . provided it is likely that, at the end of such leave, the employee will be able to perform his or her employment duties." *Wilson v. Cnty. of Orange*, 87 Cal. Rptr. 3d 439, 446 (Ct. App. 2009) (internal alterations and quotation marks omitted); *see also Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1109 (9th Cir. 2008) (indicating that providing disability leave is evidence of a reasonable accommodation). "Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected." *Hanson v. Lucky Stores, Inc.*, 87 Cal. Rptr. 2d 487, 494 (Ct. App. 1999) (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998)).

When Plaintiff began her medical leave in November 2013, it was not clear whether Plaintiff's condition would improve. *See* Plaintiff Dep. I at 48. However, in August 2016, Plaintiff informed Defendant that her doctors released her to return to work with limited restrictions. *See* Plaintiff Dep. I, Ex. 7. Plaintiff explained that she could not perform the essential duties of the Field Consultant position either with or without reasonable accommodation. *See id.* "At that point, the focus turned to reassignment to a [different] position as the accommodation sought by both sides." *Jensen v. Wells Fargo Bank*, 102 Cal. Rptr. 2d 55, 68 (Ct. App. 2000). Thus, the Court finds that there is no genuine factual dispute as to Plaintiff's theory that Defendant failed to accommodate her by not extending her medical leave.

With respect to placing Plaintiff in an open position, Plaintiff argues that Defendant failed to accommodate her by selecting King for the SRER position because

Plaintiff "had more seniority" and "more relevant education[.]" Doc. No. 28 at 14.
Plaintiff relies on *Jensen* in support of this argument, where the court stated that "to the
extent Wells Fargo rejected Jensen for positions for which she was qualified because it
had applicants who were more qualified or had seniority, it overlooks that when
reassignment of an existing employee is the issue, the disabled employee is entitled to
preferential consideration." 102 Cal. Rptr. 2d at 69. Plaintiff's reliance on *Jensen*,
however, is misplaced, as the employee in that case did not seek a promotion. The law is
well established that the duty to reasonably accommodate does not include promoting the
employee. *See Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1389 (Ct. App.
2000) ("The responsibility to reassign a disabled employee who cannot be otherwise
accommodated does not require creating a new job, moving another employee, promoting
the disabled employee, or violation another employee's rights under a collective
bargaining agreement[.]"). It is undisputed that the SRER position is a Grade 24 and
would have been a promotion for Plaintiff. Thus, Plaintiff's "preferential treatment" does
not extend to positions that are considered promotions.

Additionally, Defendant attempted to assist Plaintiff's re-entry into the workplace
on several occasions. Defendant's Leave of Absence Specialists Michael Kelsey and Jay
Donaldson communicated with Plaintiff about her return to work, her work restrictions,
and open positions she was interested in. Plaintiff Dep. I at 108-113; *see also id.*, Exs. 7,
8. In one email exchange, Plaintiff indicated she was interested in the Digital Marketing
Manager, Dealer Business Consultant, and HR System Analyst positions. *See id.*, Ex. 7.
Donaldson responded to Plaintiff's email and explained that, "[w]ith the exception of the
HR System Analyst, all of the positions you have identified are Grade 24, so please apply
for those positions thru the normal application process." *Id.* Donaldson further noted,
"[r]egarding your interest in the HR System Analyst position, it is not apparent from your
resume that you are qualified for this position." *Id.* Donaldson asked Plaintiff to provide
an explanation as to whether she satisfied the requirements for that position. *Id.* In
response, Plaintiff noted that she received her MBA in HR, but conceded that she was not

qualified for the position and admitted that "while I do not have the practical experience you outlined, I recognize that I do have to start somewhere, but I also know those requirements are in place for a reason." *Id.*

Moreover, Defendant notified Plaintiff of a Category Management Specialist Fresh Food position in Irving, Texas. *See* Plaintiff Dep. I at 103. However, Plaintiff did not consider the position because "if [7-Eleven] w[as] going to expect me to relocate," she "would expect to relocate for a position other than an Administrative Assistant or administrative position." *Id.* at 149. From January 2016 to January 2018, Plaintiff "primarily" looked for jobs in the San Diego, Las Vegas, and Los Angeles areas. *Id.* at 116.

In January 2018, Kelsey sent Plaintiff a letter indicating that he had conducted a search of the available positions at the Grade 23 level and below currently open in San Diego and Las Vegas—the two locations Plaintiff "specifically identified" as locations where she would want to accept reassignment, and that there were no available positions that could be modified with a reasonable accommodation to physically require only light walking and allow the employee to primarily work from home. *See* Plaintiff Dep. II, Ex. 33. Kelsey informed Plaintiff that she had sixty (60) days to apply for, obtain, and return to work in a position at 7-Eleven in an area where she is willing to relocate, or her employment would be terminated. *See id.* Kelsey reiterated that Plaintiff could view available positions using 7-Eleven's job posting website. *See id.*

Plaintiff admits she visited the job posting website on a regular basis, at least once, if not twice a day. *See* Plaintiff Dep. II at 245-46. However, Plaintiff was unable to identify *any* positions, aside from the SRER position, that she was interested in, believed she was qualified for, and could be transferred to in light of her work restrictions. *Id.* at 246. Additionally, Plaintiff was not aware of any open and available positions at a Grade 23 or below that she believed she was qualified for and could have performed with her work restrictions between August 2016—that date Plaintiff's doctors released her to return to work—and the date of her termination. *See* Plaintiff Dep. I at 124. Plaintiff

admits she did not apply for any other positions with 7-Eleven after she received Kelsey's January 9, 2018 letter.  *See* Plaintiff Dep. II at 209.

At his deposition, Donaldson testified that if Plaintiff was interested in a Grade 23 position or below that she was qualified for, she would not need to go through the formal application process but could just be moved into the position.  Donaldson Dep. at 16-19. With respect to a Grade 24 position, however, Plaintiff would be required to go through the normal application process because the position would be a promotion.  *See id.* at 18. Plaintiff argues that Defendant never informed her that she did not need to go through the formal application and interview process for Grade 23 positions and below.  *See* Doc. No. 28 at 14.

While Donaldson did not expressly explain this distinction to Plaintiff, he explained in his September 2016 email that with the exception of the HR System Analyst position, the positions she was interested in were all Grade 24 "so please apply for those positions thru the *normal application process*."  Plaintiff Dep. I, Ex. 7 (emphasis added). Although Defendant could have been more transparent about this distinction, the undisputed facts reveal that there was no vacant position for which Plaintiff was qualified for and could be transferred to in light of her work restrictions.[11]  *See Jensen*, 102 Cal. Rptr. 2d at 68 ("[T]he employer cannot prevail on summary judgment on a claim of failure to accommodate unless it establishes through undisputed facts that . . . there simply was no vacant position . . . for which the disabled employee was qualified and . . . capable of performing with or without accommodation").  As such, the Court finds that there is no genuine factual dispute as to Plaintiff's theory that Defendant failed to

---

[11] Plaintiff avers that a franchise representative position became available in San Diego (*see* Plaintiff Decl. ¶ 9), but aside from her declaration, there is no admissible evidence supporting the existence of such a position, and even there was, Plaintiff submits no evidence as to whether the position was open during the time that Plaintiff was looking for alternative positions, whether Plaintiff was qualified for the position, or whether she could have performed the position with or without accommodation.  Rather, Plaintiff concedes she did not know anything about the job duties or physical requirements for the position.  *See* Plaintiff Dep. I at 106.  Thus, there is no genuine dispute of material fact as to whether any vacant positions were available that Defendant could have placed Plaintiff in.

accommodate her by not placing her in another position.

Accordingly, in construing the facts in the light most favorable to Plaintiff, the Court **GRANTS** Defendant's motion with respect to Plaintiff's failure to accommodate claim. *See Rabara v. Heartland Emp't Servs., LLC*, No. 17-cv-3770-LHK, 2019 WL 1877351, at *18 (N.D. Cal. Apr. 26, 2019) (granting summary judgment on the plaintiff's failure to accommodate claim where the plaintiff "has not demonstrated a genuine fact issue").

### c. *Failure to Engage in the Interactive Process*

Plaintiff further asserts that Defendant failed to engage in the interactive process. Compl. ¶ 52. Defendant argues Plaintiff's claim fails because it provided Plaintiff with reasonable accommodation in the form of continued leaves of absence while attempting to place Plaintiff in another position. *See* Doc. No. 25-1 at 11. In opposition, Plaintiff argues Defendant "first ordered Plaintiff to sit on the ground, then go on leave, then continually gave her the run-around when it came to placing her in a position, when they were not simply ignoring her outright." Doc. No. 28 at 13.

FEHA makes it unlawful for employers to "fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability[.]" Cal. Gov't Code § 12940(n). It is the employee's "burden to initiate the process[.]" *Scotch v. Art Inst. of Cal.*, 93 Cal. Rptr. 3d 338, 361 (Ct. App. 2009). The obligation to engage in the interactive process "arises once the employer becomes aware of the need to consider an accommodation." *Id.* (internal quotation marks and citation omitted). "Once the interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous." *Id.* This duty encourages employers "to seek and find accommodations that really work[.]" *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff claims Judy Soper, Plaintiff's Supervisor in 2013, ordered her to sit on the ground and did not engage in an interactive process with her. However, it is

undisputed that at that time, Plaintiff's work injuries precluded her from performing the essential functions of the Field Consultant position. Plaintiff Dep. I at 74. Because Plaintiff was not qualified to perform her job duties, Defendant did not have an affirmative duty to engage in the interactive process. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (noting that so long as the plaintiff is qualified to perform his job duties, the employer has an affirmative duty to explore further methods of accommodation before terminating the employee).[12] Thus, the interactive process inquiry focuses on the time period when Plaintiff began looking for positions for which she was qualified to perform, either with or without reasonable accommodation.

Upon review of the record, the undisputed evidence reveals that Defendant did engage in an interactive process with Plaintiff. Specifically, Defendant provided Plaintiff with continued medical leave for more than four years. While Plaintiff was out on medical leave, Defendant's Leave of Absence Specialists Kelsey and Donaldson communicated with Plaintiff about her return to work, her work restrictions, and open positions Plaintiff was interested in and believed she was qualified for. Defendant further brought to Plaintiff's attention the Category Management Specialist in Fresh Food position in Irving, Texas, but Plaintiff did not consider the position. Plaintiff, Kelsey, and Donaldson visited Defendant's job posting website frequently to identify a vacant position for which Plaintiff was qualified.

Additionally, in January 2018, Kelsey notified Plaintiff via letter that there were no available positions at the Grade 23 level or below currently open in San Diego or Las Vegas that could be modified with a reasonable accommodation to fit Plaintiff's needs. He further indicated Plaintiff had sixty (60) days to obtain a position at 7-Eleven in an

---

[12] In any event, contrary to Plaintiff's argument that Soper ordered her to sit on the ground, Plaintiff testified at her deposition that when she informed Soper that she was unable to walk around the store, Soper said, "[o]h, try to sit down in the back some[.]" Plaintiff Dep. I at 60.

18cv893-MMA (MDD)

area where she is willing to relocate. Plaintiff inquired whether she would only be considered for Grade 23 positions and below, but Kelsey informed Plaintiff she would be considered for positions above Grade 23, in addition to Grade 23 positions and below. *See* Plaintiff Dep. I at 209.

Further, when asked at her deposition whether there was anything else Defendant "should have or could have been doing in order to find you an open and available position within 7-Eleven," Plaintiff responded, "I don't know of anything else they could have done." Plaintiff Dep. I at 121-122. "Once the parties have engaged in the litigation process, to prevail, the employee must be able to identify an available accommodation the interactive process should have produced[.]" *Scotch*, 93 Cal. Rptr. 3d at 365. Indefinite leave and receiving a promotion are not reasonable accommodations for the reasons set forth above. Because Plaintiff points to no reasonable accommodation the interactive process should have produced, Plaintiff's claim fails as a matter of law.

Accordingly, the Court **GRANTS** Defendant's motion as to Plaintiff's failure to engage in the interactive process claim. *See id.* at 366 ("Unless, after litigation with full discovery, [the plaintiff] identifies a reasonable accommodation that was objectively available during the interactive process, he has suffered no remedial injury from any violation of section 12940, subdivision (n).").

### 3. Age and Race Discrimination Claims

In her first and second causes of actions, Plaintiff contends Defendant discriminated against her based on her age and race. For example, Plaintiff alleges she was denied promotion in favor of younger, non-African American candidates. *See* Compl. ¶¶33, 42. Additionally, Plaintiff claims she was terminated based on her age and race. *Id.* ¶¶ 34, 43. Defendant argues that Plaintiff cannot identify any evidence of age or race animus that motivated 7-Eleven to either select a different candidate for the SRER position or to terminate Plaintiff's employment. *See* Doc. No. 25-1 at 13-14. Additionally, even if Plaintiff could state a prima facie case for her age and race discrimination claims, Plaintiff fails to demonstrate Defendant's stated reasons for her

non-selection and termination were pretextual. *See id.* at 16, 18.

To state a prima facie case of race or age discrimination under FEHA, a plaintiff must show that: "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action . . ., and (4) some other circumstance suggests discriminatory motive." *Guz*, 8 P.3d at 1113. Thus, a plaintiff must establish a causal nexus between the adverse employment action and her protected characteristic. *See id.* at 1117 ("Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions.") (emphasis in original); *see also* Cal. Gov't Code § 12940(a).

The Court proceeds by analyzing: (a) the applicability of the continuing violation doctrine; (b) Plaintiff's race and age discrimination claims based on her non-selection for the SRER position; and (c) Plaintiff's race and age discrimination claims based on her termination.

### a. *Continuing Violation Doctrine*

Although it is not entirely clear from Plaintiff's opposition brief, it appears that Plaintiff asserts that some actions by Defendant and its employees, which occurred more than one year before Plaintiff filed her complaint with the EEOC in March 2017, violated FEHA. *See* Doc. No. 28 at 19-20. *See id.* Plaintiff argues that the continuing violation doctrine applies to these otherwise time-barred claims. Defendant asserts that the doctrine does not apply, and that Plaintiff is barred from asserting claims that occurred prior to March 2016. *See* Doc. No. 32 at 7.

"Employees who believe they have been discriminated against [in violation of FEHA] generally have one year in which to file an administrative complaint with the DFEH, the agency charged with administering the FEHA." *McDonald v. Antelope Valley Cmty. College Dist.*, 194 P.3d 1026, 1036 (Cal. 2008). The continuing violation doctrine "constitutes an exception to FEHA's one-year limitations period." *Weeks v. Union Pac. R.R. Co.*, 137 F. Supp. 3d 1204, 1224-25 (E.D. Cal. 2015).

"The continuing violation doctrine allows a court, in some instances, to consider alleged unlawful behavior that would otherwise be time-barred." *Anderson v. City and Cnty. of S.F.*, 169 F. Supp. 3d 995, 1012 (N.D. Cal. 2016). The doctrine "aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 875 (Cal. 2013). In *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123 (Cal. 2005), the California Supreme Court held that "the continuing violations doctrine may be applicable not only to hostile work environment claims, but also to discrimination and retaliation claims where a plaintiff alleges a continuing course of unlawful conduct." *Leland v. City and Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1093 (N.D. Cal. 2008) (citing *Yanowitz*, 116 P.3d at 1142).

To establish a "continuing course of conduct" for purposes of FEHA, the plaintiff must demonstrate that the employer's actions: (1) were "sufficiently similar in kind . . .; (2) have occurred with reasonable frequency; and (3) have not acquired a degree of permanence." *Yanowitz*, 116 P.3d at 1142. "'[P]ermanence' properly should be understood to mean 'that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile.'" *Id.* at 1142 n.19 (quoting *Richards v. CH2M Hill, Inc.*, 29 P.3d 175, 190 (Cal. 2001)).

Plaintiff filed her claim of discrimination with the EEOC in March 2017. *See* Plaintiff Dep. I, Ex. 14. Application of FEHA's one-year statute of limitations would bar any conduct that occurred prior to March 2016. Plaintiff appears to rely on two incidents that occurred outside of the applicable one-year statute of limitations period. For example, in her Complaint, Plaintiff alleges that "[i]n or around 2014, Plaintiff reported a complaint of discrimination, based on race, to 7-Eleven's Human Resources Representative. Plaintiff complained about non-selection for a 7-Eleven position in Florida, for which she was well-qualified. A white male who was less qualified than

Plaintiff was selected, rather than Plaintiff."[13]  Compl. ¶ 14; *see also* Arnold Decl., Ex. 10.  At her deposition, Plaintiff testified that the complaint was resolved in "2014 or beginning of 2015[.]"  Plaintiff Dep. I at 97.  Additionally, in her declaration, Plaintiff alleges that in 2011, she applied for an HR position with 7-Eleven, "only to be told by HR Rep Enrique Delgado that I did not have enough HR experience event [sic] though my minor was in Personnel Management, and that I did not belong to enough organizations though I belonged to the NAACP" and served "on the Nevada State Ethics commission."  Plaintiff Decl. ¶ 6.  Plaintiff contends she repeatedly attempted to promote and find new positions, "only to find that younger white candidates were repeatedly chosen over me despite my qualifications and long history of an exemplary record at 7-Eleven."  *Id.*

Defendant asserts that Plaintiff cannot establish a continuing course of conduct because each of the two incidents acquired a degree of permanence.  *See* Doc. No. 32 at 7.  Plaintiff summarily contends that "the discrimination is all the same, and never stops."  Doc. No. 28 at 20.  However, "[s]everal courts have found that a series of rejected job applications does not demonstrate a continuing violation."  *Morgan*, 105 Cal. Rptr. 2d at 663; *see also Alvarado v. FedEx Corp.*, No. 4-cv-98 SI, 2006 WL 644875, at *21 (N.D. Cal. Mar. 13, 2006) ("Discrete discriminatory acts such as the failure to promote constitute separate actionable employment practices, and the limitations period on each begins to run when the practice occurs.").  In *Morgan*, the court affirmed the trial court's finding that the plaintiff had not established a continuing violation based on the University's repeated failure to rehire him.  105 Cal. Rptr. 2d at 664.  The court explained, "each time appellant was informed he was not being hired for a position to which he had applied, he was, or should have been," aware of his duty to assert his rights.  *Id.*  Thus, each alleged adverse employment action involves a "series of isolated

---

[13]  In her opposition brief, Plaintiff claims she filed the charge with the EEOC on December 17, 2013.  *See* Doc. No. 28 at 4.

employment decisions[.]" *Id.* at 664 (internal quotation marks and citation omitted).

Here, the Court finds that the continuing violation doctrine is inapplicable because Plaintiff's non-selection for positions in 2011 and 2013 were isolated employment decisions. The undisputed evidence shows not only that Plaintiff was aware of her duty to assert her rights, but Plaintiff pursued those rights by filing a charge with the EEOC related to her non-selection for the loss prevention role in December 2013. *See* Arnold Decl., Ex. 10. That Plaintiff did not file a complaint regarding the 2011 incident does not alter the Court's finding because Plaintiff knew, or should have known, of her duty to assert her rights at that time. *See Morgan*, 105 Cal. Rptr. 2d at 662-63 ("Thus, a continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the time the earlier events occurred.").

Accordingly, to the extent Plaintiff seeks to add new claims related to the 2011 and 2013 incidents, such claims are time-barred. Although not mentioned by either party, the statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113; *see also Lyons v. England*, 307 F.3d 1092, 1108 (9th Cir. 2002) ("[A]ppellants are permitted to offer evidence of the pre-limitations discriminatory detail assignment scheme in the prosecution of their timely claims.").

### b. *Non-Selection for SRER position*

#### i. Prima Facie Case

Defendants concede that the first three elements of Plaintiff's race and age discrimination claims are satisfied. Defendant argues that Plaintiff cannot identify any evidence to suggest that her non-selection for the SRER position was motivated by her age or race. *See* Doc. No. 25-1 at 14. Plaintiff contends that the last element is satisfied because Defendant treated younger, white employees more favorably than Plaintiff. Specifically, Tucker "started out in the same position as Plaintiff, but received multiple promotions in a short period of time." Doc. No. 28 at 17. Additionally, Plaintiff

contends Tucker used openly "ageist language." *Id.*

"The concept of 'similarly situated' employees may be relevant to both the first and third steps of the *McDonnell Douglas* framework." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010). The Court is mindful that a "plaintiff's burden is much less at the prima facie stage than at the pretext stage." *Id.* "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003).

Here, Plaintiff's comparator argument is unavailing because Plaintiff fails to show that she and Tucker are similarly situated. While Plaintiff summarily states Tucker started out as a field consultant, the excerpts Plaintiff submits from Tucker's deposition do not confirm this. Moreover, to the extent Plaintiff takes issue with Tucker's promotion history, Plaintiff fails to introduce any admissible evidence that she and Tucker displayed similar conduct. Rather, Plaintiff speculates that she had "more experience than most candidates for promotion, including Tucker." Doc. No. 28 at 17. However, Plaintiff does not submit any evidence of Tucker's qualifications. Thus, Plaintiff's arguments, without more, do not give rise to an inference that Defendant acted with a discriminatory motive. *See Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

Further, Plaintiff mischaracterizes Tucker's deposition testimony with respect to his alleged ageist comments. Plaintiff's counsel used the terms "energy" and "enthusiasm" in questioning Tucker. *See* Tucker Dep. at 66. When asked whether King "had shown a lot of energy in terms of pursuing knowledge about the [SRER] role, Tucker responded, "[t]hat was part of it." *Id.* Immediately thereafter, Tucker explained that the other part of why he selected King was because of "[h]er experience in that specific territory that she was going to be taking over." *Id.* Tucker also responded in the affirmative after being asked whether he "felt as though the way [Plaintiff] was falling short was showing enthusiasm for the role itself[.]" *Id.* No rational jury could find that

Tucker's comments at his deposition support an inference of discriminatory motive. *See Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that the employer's use of the phrase "we don't necessarily like grey hair" did not support an inference of discriminatory motive).

Accordingly, the Court finds that Plaintiff has not established a prima facie case of age or race discrimination based on her non-selection for the SRER position. *See Weil*, --- F.3d ---, 2019 WL 1891796, at *7 (noting "the plaintiff still must produce evidence [to establish a prima facie case], not just pleadings or argument.").

### ii. Legitimate, Non-Discriminatory Reason

Defendant asserts that even if Plaintiff can state a prima facie case of discrimination related to her non-selection for the SRER position based on age and race, it has met its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's non-selection. As noted above, Tucker testified that he believed King was the best candidate for the role, noting that she blew him and Opsahl away in the interview. Tucker Dep. at 41. Specifically, King "was very knowledgeable and had done her homework in talking to other senior real estate reps that were currently in the role to create and understanding and knowledge base for the role[.]" *Id.* When there was a temporary vacancy in a Market Manager role, King was selected to be the temporary Market Manager, in charge of supervising all Field Consultants in her market. *See id.*, Ex. 12. King also won her market's Most Valuable Player Award in fiscal years 2015 and 2016. *See id.*

The Court finds that Defendant has submitted substantial evidence that Plaintiff's non-selection for the SRER position was for a legitimate, non-discriminatory reason. *See Reid*, 235 P.3d at 993 n.2. Accordingly, the burden shifts to Plaintiff to show pretext.

### iii. Pretext

Plaintiff asserts that Defendant's explanation for her non-selection lacks credibility because "[b]ased on the ageist comments and numerous young, white comparators, there is clear evidence of age and race discrimination." Doc. No. 28 at 17. Defendant

contends Plaintiff's arguments are "pure speculation" and in the absence of any admissible evidence, Plaintiff's "conclusory statements are insufficient to meet her burden of proof on her age and race discrimination claims." Doc. No. 32 at 8.

Where evidence of pretext is circumstantial, the plaintiff may demonstrate pretext by showing that the employer's proffered explanation is unworthy of credence because it is "internally inconsistent or otherwise not believable." *Chuang*, 225 F.3d at 1127. To create a triable issue of pretext, Plaintiff must produce "specific" and "substantial" facts. *Godwin*, 150 F.3d at 1221.

Here, Plaintiff's comparator argument is unavailing because Plaintiff submits no evidence that she and Tucker, or that she and any other individual, were similarly situated. "A plaintiff may raise a triable issue of pretext through comparative evidence that the employer treated . . . similarly situated employees more favorably than the plaintiff." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. Plaintiff claims she "had much more experience than most candidates for promotion, including Tucker." Doc. No. 28 at 17. However, Plaintiff fails to offer any evidence of Tucker's qualifications, and admits that she did not know anything about the other candidates' qualifications who applied for the SRER position. Plaintiff Dep. I at 145-46. Nor did Plaintiff know the age, race, or gender of the other candidates who were not selected for the SRER position. *Id.* at 145. Thus, because Plaintiff fails to offer any evidence that Defendant treated similarly situated employees more favorably than her, Plaintiff has not raised a triable issue of pretext through comparative evidence.[14]

---

[14] Plaintiff testified at her deposition that she believes her race played a role in her not receiving a promotion for the Protection Specialist position in Florida in 2013 because the individual selected was a white male. Plaintiff Dep. I at 87. Although Plaintiff is barred from bringing a claim based on this incident, the Court may consider this incident as background evidence of her timely race discrimination claim. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 113. However, Plaintiff's evidence is weak at best because Plaintiff also testified that she is aware of African-American employees who hold positions

Additionally, Tucker's alleged ageist remarks are insufficient to create a triable issue of fact as to Plaintiff's non-selection for the SRER position. Contrary to Plaintiff's assertion, Tucker did not use the terms "energy" or "enthusiasm" at his deposition. Even if Tucker had used those terms, they would be insufficient to raise a question of fact as to whether Defendant's proffered reason for Plaintiff's non-selection was pretextual for age discrimination. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) (finding that use of the words "young and promotable" is "not sufficient to raise a question of fact as to whether the reasons [the employer gave for termination] were pretexts for age discrimination."); *Craig v. Southwest Airlines, Co.*, No. 4-cv-1086-GHK (SSx), 2007 WL 4105980, at *5 n.5 (C.D. Cal. Jan. 23, 2007) (holding comments of "you're that old?" and "old school leadership style" are insufficient to raise a triable issue of fact concerning the plaintiff's age discrimination claim); *cf. Sandell v. Taylor-Listug, Inc.*, 115 Cal. Rptr. 3d 453, 476 (Ct. App. 2010) (finding statements that the plaintiff was "old compared to [the CEO]" and "'Boy, you are old' or, 'You are getting up there'" is sufficient evidence from which one could reasonably infer that the employer terminated the plaintiff because of his age).

Moreover, in the background section of her brief, Plaintiff references disparaging comments about her age made by an individual named Jim Jensen, who was Plaintiff's supervisor from "maybe 2000 until 2002 or '03." Plaintiff Dep. I at 61. Plaintiff claims Jensen "was always joking" about her age, and if Plaintiff didn't hear something, he would say "you didn't hear that? You're losing your hearing." *Id.* Plaintiff also recalls that at that time, she was "constantly being asked when was [she] going to retire." *Id.* at 60-61. To the extent Plaintiff believes these comments are sufficient to demonstrate pretext, the Ninth Circuit has "distinguished between derogatory statements that are linked to the adverse employment action from those that are merely impolitic expressions

---

higher than a Grade 23. *See* Plaintiff Dep. I at 95. Standing alone, this evidence is insufficient to show Defendant's proffered reason for Plaintiff's non-selection was a pretext. *See Lyons*, 307 F.3d at 1111.

of personal prejudice." *Decker v. Barrick Goldstrike Mines, Inc.*, 645 F. App'x 565, 568 (9th Cir. 2016). As these comments were made by an individual who had no decision-making authority over the SRER position and were made more than a decade prior to the events at issue in this case, Jensen's comments, without more, do not give rise to a triable issue of fact concerning Plaintiff's age discrimination claim. *See id.*

Finally, Plaintiff admits she never heard, learned of, or saw in writing any negative or disparaging comments about her race, and does not recall hearing anything or learning about any disparaging or negative comments about her age after she started her medical leave in 2013.[15] Pl. Dep. I at 63-64. Moreover, Plaintiff concedes Tucker did not say or do anything during the interview that led Plaintiff to believe he was racist. *See id.* at 141-42. Rather, when asked why she believed her race played a role in the hiring decision for the SRER position, Plaintiff testified "[w]ell, first of all, I don't know of any—and certainly doesn't mean that there aren't any—but I don't know of any African-Americans who hold that position." *Id.* at 141. When asked why she believes her age played a role in the hiring decision, Plaintiff testified that "[w]ell, I don't think it is any secret that people over 50, let's say over 50, are regularly discriminated against." *Id.* at 144. Tucker "probably made some assumptions about me based on my—what he perceived as my enthusiasm and my abilities to form the job." *Id.* However, when asked whether Tucker said or did anything that led her to believe that, Plaintiff responded, "[n]o, he did not." *Id.*

Accordingly, in construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to produce "specific" *and* "substantial" facts showing that Defendant's explanation for her non-selection is unworthy of credence. *Godwin*, 150 F.3d at 1221. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's race and age discrimination claims to the extent predicated on

---

[15] Aside from Jensen's comments, Plaintiff does not claim she heard or was aware of disparaging comments about her age.

Plaintiff's non-selection for the SRER position.  *See Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1150 (9th Cir. 2017) ("In short, context is key when a plaintiff alleges age discrimination based on circumstantial evidence.  Considering the context of this case . . .[,] the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.") (internal quotation marks and citation omitted).

### c. *Termination*

#### i. Prima Facie Case

Defendant contends that Plaintiff cannot satisfy the second element of her age and race discrimination claims based upon her termination because "it is undisputed that due to her permanent work restrictions, [Plaintiff] was no longer qualified for her position as a Field Consultant."  Doc. No. 25-1 at 17-18; *see Guz*, 8 P.3d at 1113 (explaining that to state a prima facie case of race or age discrimination under FEHA, a plaintiff must show that: "(2) he was qualified for the position he sought or was performing competently in the position he held").  Plaintiff does not respond to Defendant's argument in her opposition brief.

The undisputed facts demonstrate that due to her work restrictions, Plaintiff could not perform the duties of the Field Consultant position, either with or without reasonable accommodation.  *See* Plaintiff Dep. I, Ex. 5.  Plaintiff concedes as much, noting, "I am not able to return to the field consultant position, but can accept positions with limited walking and kneeling, etc."  *Id.*  As such, the Court finds that Plaintiff has not established a prima facie case of either age or race discrimination based on her termination.

#### ii. Legitimate, Non-Discriminatory Reason

Defendant claims that even if Plaintiff can state a prima facie case of discrimination related to her termination based on age and race, it has satisfied its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's termination.  It is undisputed that Plaintiff could not perform the essential duties of the Field Consultant position, either with or without reasonable accommodation.  *See id.*  Moreover, it is

undisputed that there were not any open and available positions from August 2016 to the date of Plaintiff's termination at Grade 23 or below that she was qualified for and could have performed with her work restrictions. *See* Plaintiff Dep. I at 124. After extending Plaintiff's leave for more than four years, Defendant provided notice to Plaintiff in January 2018 that her failure to obtain a position at 7-Eleven within sixty (60) days would result in her termination. *See* Plaintiff Dep. II, Ex. 33.

The Court finds that Defendant has met its burden of demonstrating that Plaintiff's termination was for a legitimate, non-discriminatory reason. *See Reid*, 235 P.3d at 993 n.2. Accordingly, the burden shifts to Plaintiff to show pretext

### iii. Pretext

Plaintiff offers no explanation as to why Defendant's stated reason for her termination was pretextual. *See Wexler v. Jensen Pharm., Inc.*, 739 F. App'x 911, 913 (9th Cir. 2018) (affirming district court's grant of summary judgment and noting that "[e]ven if we were to conclude that there was a material issue of fact as to whether Wexler was performing competently, Wexler cannot show that JPI's stated reason for terminating Wexler was a pretext.").

Accordingly, because Plaintiff has demonstrated neither a prima facie case of age or race discrimination based on her termination, nor shown that Defendant's proffered explanation is "internally inconsistent or otherwise not believable," the Court **GRANTS** Defendant's motion as to Plaintiff's age and race discrimination claims based on her termination. *Chuang*, 225 F.3d at 1127.

### 4. Retaliation Claim

In her fourth cause of action, Plaintiff alleges she was retaliated against for: "(1) complaining about discrimination and retaliation, (2) filing complaints of discrimination with the EEOC and DFEH, (3) participating, as a named plaintiff, in a class action lawsuit against Defendant . . ., and (4) requesting reasonable accommodation of her disability[.]" Compl. ¶ 60. Specifically, Plaintiff asserts Defendant subjected her to "multiple adverse employment actions, including . . . denial of promotion, denial of

reasonable accommodations, and termination of Plaintiff's employment, among other things." *Id.* ¶ 62. Defendant argues Plaintiff cannot show a causal link between a protected activity and adverse employment action with respect to her non-selection for the SRER position or her termination. Doc. No. 25-1 at 20-21. Defendant further contends that Plaintiff cannot demonstrate its stated reasons for Plaintiff's non-selection and termination were pretextual. *See id.* at 22.

FEHA makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). To establish a prima facie case of retaliation under FEHA, a plaintiff must demonstrate that: (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the protected activity and the employer's action. *See Morgan*, 105 Cal. Rptr. 2d at 666. "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as. . . the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). If Plaintiff can assert a prima facie case of retaliation, "the burden shifting scheme articulated in *McDonnell Douglas Corp. . . .* applies." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (internal quotation marks omitted).

### a. *Non-Selection for SRER Position*

With respect to Plaintiff's non-selection for the SRER position, Defendant argues that too much time has elapsed between Plaintiff's complaints and her non-selection for the SRER position to establish the causation element. Plaintiff does not respond to Defendant's argument.

The undisputed evidence demonstrates that Plaintiff: (1) complained about discrimination and retaliation "[i]n or around 2014" (Compl. ¶ 14); (2) filed a charge of discrimination in 2014, which settled in "2014 or beginning of 2015" (Plaintiff Dep. I at

97[16]); (3) served as a lead plaintiff in a lawsuit filed against Defendant in 2014, and the case settled in 2015 (*see* Compl. ¶ 15); and (4) requested reasonable accommodation in February 2014, after Plaintiff exhausted her FMLA/CFRA leave and Defendant extended Plaintiff's leave (*see* Plaintiff Dep. II, Exs. 35, 33). Tucker made his hiring decision for the SRER position in January 2017. *See* Plaintiff Dep. I, Ex. 14.

The Supreme Court has held that an adverse action "taken . . . 20 months later [than protected activity] suggests, by itself, no causality at all." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1036 (9th Cir. 2006) (affirming the district court's holding that a seven-month gap between an employee's complaint and his termination is too great "for a reasonable jury to conclude that [the employee's] complaints caused [the employer] to fire him.").

Here, as Defendant points out, there is at least a two- to three-year gap between Plaintiff's complaints and Tucker's SRER decision. Given the two- to three-year gap between Plaintiff's protected activities and her non-selection for the SRER position, Plaintiff's failure to introduce any evidence of surrounding circumstances that show a retaliatory motive, and Plaintiff's failure to respond to Defendant's arguments, the Court finds that Plaintiff fails to state a prima facie case for retaliation based on her non-selection. *See Stucky v. Dep't of Educ.*, 283 F. App'x 503, 505 (9th Cir. 2008) ("Stucky has not made any showing of a causal link between her protected activities and the adverse employment actions taken by the defendants."). Accordingly, the Court **GRANTS** summary judgment as to Plaintiff's retaliation claim premised on her non-selection for the SRER position.[17]

---

[16] The March 2017 Charge of Discrimination was filed two months *after* Plaintiff learned she was not selected for the SRER position. Similarly, the January 2018 amended complaint was filed nearly one year after Tucker made his hiring decision. Thus, the 2017 and 2018 complaints cannot serve as the protected activities that caused Plaintiff's non-selection.

[17] Even if Plaintiff could establish a prima facie case of retaliation based on her non-selection, Plaintiff offers no explanation as to why Defendant's stated reason, set forth above, for her non-selection was a pretext. *See Harris v. Delta Air Lines, Inc.*, No. 18cv2341-ODW (FFM), 2019 WL 1506009, at

### *b. Termination*

2        With respect to Plaintiff's termination, Defendant contends that Plaintiff filed her

3   March 2017 Charge of Discrimination one year before her termination, and Plaintiff's

4   remaining protected activities occurred four years before her termination.  *See* Doc. No.

5   25-1 at 21.  Thus, Defendant argues that too much time has elapsed between the protected

6   activities and her termination to establish the causal element of her retaliation claim.  *See*

7   *id.*  In opposition, Plaintiff clarifies that she was terminated just seven weeks after she

8   filed her January 2018 Charge of Discrimination (*see* Arnold Decl., Ex. 33).  Without

9   responding to Defendant's argument as to the other protected activities, Plaintiff claims

10  she "is entitled to an inference of a causal link between her [January] 201[8] DFEH

11  complaint and her sudden termination[.]"  Doc. No. 28 at 18.  In reply, Defendant asserts

12  that Plaintiff offers no evidence to establish that Plaintiff served the January 2018 charge

13  on Defendant, as required by California Government Code Section 12962,[18] until defense

14  counsel requested it from Plaintiff's counsel in 2019.  *See* Doc. No. 32 at 9.

15       Here, with respect to Plaintiff's alleged protected activities, excluding the January

16  2018 DFEH complaint,[19] the Court finds that the respective gaps of one year and four

17  years between these actions and her termination are "too great to support an inference

18  that [Plaintiff's] complaints caused h[er] termination."  *Cornwell*, 439 F.3d at 1035.

19  Plaintiff offers no other evidence or argument to overcome the significant temporal gap.

---

*5 (C.D. Cal. Apr. 5, 2019) (granting summary judgment where Plaintiff fails "to demonstrate that the proffered reason was mere pretext for discrimination").

   [18]  Section 12962 provides in relevant part that "where a person claiming to be aggrieved by an alleged unlawful practice hires or retains private counsel for purposes of representation of the claim, the private counsel, and not the department, shall cause the verified complaint filed under the provision of this part to be served . . . upon the person, employer, labor organization, or employment agency alleged to have committed the unlawful practice."  Cal. Gov't Code § 12962(b).

   [19]  As discussed above, Plaintiff also filed an amended DFEH complaint on April 10, 2018. However, because Plaintiff filed this complaint after her termination, it cannot serve as the protected activity that caused Plaintiff's termination.

Thus, these acts cannot serve as protected activities upon which Defendant purportedly relied in terminating Plaintiff's employment.  *See Bryant v. OptumRX Pharmacy, Inc.*, No. 16-cv478-CJC (JCGx), 2017 WL 5891054, at *10 (C.D. Cal. Feb. 21, 2017) ("[T]he Court deems the four month gap too long to infer causation as a matter of law").

Regarding the January 2018 DFEH complaint, the Court agrees that Plaintiff presents no evidence that she served Defendant with the complaint as required by Section 12962.  The undisputed evidence submitted reveals that Plaintiff's counsel was aware of this requirement.  On January 26, 2018, DFEH informed Plaintiff's counsel that "**[p]ursuant to Government Code section 12962, DFEH will not serve these documents on the employer**.  You must serve the complaint separately, to all named respondents."  Doc. No. 32-1 (hereinafter "Peterson Reply Decl."), Ex. D at 32[20] (emphasis in original).  Additionally, Plaintiff submits a copy of the January 2018 DFEH complaint as Exhibit 33 to her counsel's declaration in opposition to Defendant's motion. *See* Arnold Decl., Ex. 33.  In describing this document, Plaintiff's counsel notes that the January 2018 complaint was "introduced at Plaintiff's deposition[.]"  Arnold Decl. ¶ 33. Plaintiff's counsel makes no mention of previously serving this complaint on Defendant, nor is there any way for the Court to determine whether the document has been previously served on Defendant by reviewing the record.  Without knowledge of Plaintiff's January 2018 DFEH complaint prior to Plaintiff's termination, the complaint could not have caused Plaintiff's termination.  *See Cornwell*, 439 F.3d at 1035 (affirming district court's grant of summary judgment as to the plaintiff's retaliation claim and noting that the district court properly concluded that the record did not contain evidence that the employer "knew about [the plaintiff's] complaint before [the employer] demoted him, and thus [the plaintiff's] complaint could not have caused [his] demotion.").

Accordingly, considering the one- and four-year gaps between Plaintiff's protected activities and her termination, Plaintiff's failure to introduce any evidence that Defendant

---

[20]  Citations to this document refer to the pagination assigned by the CM/ECF system.

was served with the 2018 DFEH complaint, and the lack of any surrounding circumstances that show a retaliatory motive, the Court finds that Plaintiff fails to state a prima facie case for retaliation based on her termination. *See Stucky*, 283 F. App'x at 505 (affirming grant of summary judgment on the plaintiff's retaliation claim where the plaintiff made no showing of a causal link between her protected activities and the adverse employment actions). Accordingly, the Court **GRANTS** summary judgment as to Plaintiff's retaliation claim premised on her termination.[21]

### 5. Multi-Factor FEHA Claim

Plaintiff's fifth cause of action alleges "[v]iolation of FEHA Based on a Combination of Protected factors, Including Age, Race, Disability/Perceived Disability, and FEHA Retaliation." *See* Compl. Specifically, Plaintiff claims that Defendant "subjected [her] to . . . denial of promotion, denial of reasonable accommodations, and termination of Plaintiff's employment" and that the "discrimination, retaliation, and termination were substantially motivated by" Plaintiff's "age, race, perceived and/or actual disability, and/or because Plaintiff engaged in various forms of protected activity[.]" *Id.* ¶¶ 70-71.

Defendant argues that the Court should grant summary judgment as to Plaintiff's fifth cause of action because it is duplicative of her first four causes of action. *See* Doc. No. 25-1 at 22. In opposition, Plaintiff summarily asserts, "Defendant advances no unique arguments to support its attack on Plaintiff's multi-factor violation claim" and that "[s]ummary adjudication should be denied for the same reasons as Plaintiff's other FEHA claims." Doc. No. 28 at 19.

"It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." *M.M. v. Lafayette*

---

[21] Even if Plaintiff could establish a prima facie case of retaliation based on her termination, Plaintiff offers no explanation as to why Defendant's stated reason, set forth above, for her termination was a pretext. *See Harris*, 2019 WL 1506009, at *5 (granting summary judgment where Plaintiff fails "to demonstrate that the proffered reason was mere pretext for discrimination").

Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012). Here, Plaintiff's fifth cause of action asserts the same alleged unlawful actions set forth in her first through fourth causes of action. The Court is unaware of any "multi-factor" FEHA claim, and Plaintiff cites to no authority to support her argument. Accordingly, the Court **GRANTS** Defendant's motion as to Plaintiff's duplicative fifth cause of action. *See Harmon v. Cnty. of Sacramento*, No. 12cv2578-TLN, 2016 WL 319232, at *13 (E.D. Cal. Jan. 27, 2016) ("[T]his Court is unaware of any legal reason to maintain two causes of action with identical proof requirements and identical relief available. Therefore, Defendants' motion for summary judgment as to Plaintiffs' Ninth Cause of Action is granted.").

### 6. Failure to Prevent Discrimination and Retaliation and Wrongful Termination in Violation of Public Policy Claims

Plaintiff's sixth cause of action alleges Defendant failed to prevent discrimination and retaliation in violation of Cal. Gov't Code § 12940(k). *See* Compl. Defendant argues that Plaintiff's claim fails because it is derivative of her discrimination and retaliation claims. *See* Doc. No. 25-1 at 23. The Court agrees. Because Plaintiff fails to create a triable issue of material fact with respect to her discrimination and retaliation claims, Plaintiff's claim for failure to prevent discrimination and retaliation "must also fail." *Harris*, 2019 WL 1506009, at *5; *see also Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (Ct. App. 1998) ("Employers should not be held liable for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented.").

Additionally, Plaintiff's seventh cause of action alleges Defendant wrongfully terminated her in violation of public policy. If a discrimination claim fails, "plaintiff's cause of action for wrongful termination in violation of public policy fails because it is derivative of plaintiff's statutory claim under Government Code § 12940." *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007). As set forth above, because Plaintiff "has neither made a *prima facie* showing for finding . . . discrimination nor overcome defendant's evidence of a legitimate, nondiscriminatory reason for

18cv893-MMA (MDD)

plaintiff's termination under FEHA[,]" Plaintiff's cause of action for wrongful termination in violation of public policy necessarily fails. *Id.*

Accordingly, the Court **GRANTS** Defendant's motion as to Plaintiff's claims for failure to prevent discrimination and retaliation and wrongful termination in violation of public policy.

C<small>ONCLUSION</small>

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment in its entirety and dismisses Plaintiff's claims with prejudice.[22]  The Clerk of Court is instructed to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated:  May 23, 2019

HON. MICHAEL M. ANELLO
United States District Judge

---

[22]  As such, the Court **DENIES AS MOOT** Defendant's motion with respect to Plaintiff's claim for punitive damages.